UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ALLISON SHIPES, JANI PLATZ,
KELLY KADE, and THERESA JULL,**
individually and on behalf of all similarly
situated people,

      Plaintiffs,

vs.

Case No:
Hon.

**AMURCON CORPORATION,**
a Michigan Corporation,

      Defendant.
_____/

# PLAINTIFFS' COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

## INTRODUCTORY STATEMENT

1. This is a civil action brought on behalf of the above named Plaintiffs and all similarly situated workers employed by Defendant AMURCON CORPORATION during the years 2007 to 2010 to recover benefits under the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA"). Plaintiffs and putative class members worked performing various job duties throughout Defendant's places of business, including but not limited to its principal office in Oakland County, Michigan.

2. Plaintiffs and putative class members complain that Defendant knowingly engaged in a pattern and practice of unlawful conduct which resulted in denying them owed wages. Specifically, Plaintiffs and putative class members were and are employees who are entitled to minimum wage, overtime compensation, documentation of compensation time, and

prompt payment of amounts that the employer owes an employee when the employer suffers or permits an employee to work, quits, or is terminated and other compensation and working conditions that are prescribed by law.

3.      Defendant AMURCON CORPORATION required Plaintiffs and putative class members to work more than forty (40) hours in a work week without overtime compensation as required by law.

4.      Plaintiffs and putative class members seek a declaration that their rights have been violated, including the violation of their rights under the FLSA, an award of unpaid wages, an award of liquidated damages, and an award of reasonable attorney fees and costs to make them whole for the damages they have suffered, and to ensure that they and future workers will not be subjected by the Defendant to such illegal conduct in the future.

## JURISDICTION

5.      This Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 28 USC §§ 1331, and Section 16(b) of the FLSA, 29 USC § 216(b).

## PARTIES

6.      Plaintiffs Alison Shipes, Jani Platz, Kelly Kade, and Theresa Jull ("Plaintiffs") are adults and worked for Defendant AMURCON CORPORATION ("AMURCON") between 2007 and 2010.

7.      Plaintiffs resided in the State of Michigan at all relevant times.

8.      Plaintiffs bring this action on behalf of themselves and all Plaintiffs—current and former persons who were, are, or will be employed by AMURCON, in different capacities at any time within the three years prior to the filing of the initial complaint and through the final disposition of this action, who were, are, or will be eligible for but did not receive overtime

compensation or minimum wage. Plaintiffs will more specifically define any FLSA § 216(b) collective action class in a motion to certify such class or collective action.

9. AMURCON is an "employer" within the meaning of the FLSA, and has, to its financial benefit and competitive business advantage, illegally retained monies due the Plaintiffs and putative class. The company employs hundreds of workers and is currently headquartered in Oakland County, Michigan.

10. AMURCON was incorporated in 1971 and is owned and operated by Gilbert "Buzz" Silverman.  See *http://www.amurcorp.com/about_us/index.html*.

11. AMURCON touts itself as "one of the nation's leading property management companies specializing in government subsidized multi-family housing." *Id*.

12. AMURCON states that its "portfolio includes more than 6,000 apartment units. The company has 250 Associates and over 10,000 residents." *Id*.

13. AMURCON employed Plaintiffs, and employs persons similarly situated to Plaintiffs, to provide services that include, but are not limited to, "marketing, leasing, resident services, property maintenance, accounting and finance." *Id*.

14. AMURCON subjected Plaintiffs and similarly situated employees to uniform company policies concerning clocking in, working hours and compensation, including overtime.

## **VENUE**

15. Venue is proper in this Court pursuant to 28 USC § 1391(b) and (c).

16. This Court has personal jurisdiction over AMURCON because it is registered in Michigan, conducts business in Michigan, and committed the unlawful acts described in this Complaint in Michigan.

**COMMON ALLEGATIONS**

17. AMURCON hired Plaintiffs to perform (among other things) marketing, leasing, resident services, property maintenance, accounting and finance services to the tenants and managerial staff at AMURCON. These services specifically included but were not limited to:

   a. Processing of work orders and accounts payable paperwork;

   b. Computer data entry, resident recordkeeping, and filing;

   c. Preparing financial statements and tax paperwork;

   d. Showing residential units to prospective tenants;

   e. Collection of rents and other tenant charges;

   f. Maintenance, including electrical, plumbing, HVAC, carpentry, and snow removal;

   g. Janitorial duties; and

   h. Premises security.

18. This work was performed in support of AMURCON's overall business goal—to lease as many residential units as possible.

19. AMURCON has been fully aware of the FLSA at all times relevant to this action. Still, upon information and belief, AMURCON has knowingly and willfully violated the FLSA in furtherance of its own financial success.

20. Upon information and belief, AMURCON carefully tracked time-in and time-out data. For example, AMURCON utilized specific computer software for employees to record their start and stop times during the work day. In addition, AMURCON also utilized fingerprinting equipment and software to record work hours.

21. AMURCON required Plaintiffs and putative class members to work overtime; more than forty (40) hours in a week.

22. For example, Plaintiffs are aware of other AMURCON employees who worked substantial overtime: 10 hours per day for 6-7 days per week during 2007-2010; 10 hours per day for 6-7 days per week during 2008-2010; 10 hours per day for 6-7 days per week during 2009-2010; 10 hours per day for 5 days per week during 2008-2009; 12 hours per day for 5-6 days per week during 2008-10; 8 hours per day for 6-7 days per week during 2009-10.

23. However, while AMURCON required Plaintiffs and putative class members to work overtime, it wrongfully and illegally withheld due compensation by adjusting Plaintiffs' and putative class members' time records to reflect no more than forty (40) hours of work in any given week ("time-records fixing"), regardless of whether they actually worked more than forty hours.

24. Upon information and belief, AMURCON began experiencing financial difficulties in early 2007. In response to those difficulties, it instituted a "Labor Cost Control Policy" on or about March 1, 2007 and began time-records fixing.

25. The time-records fixing process included, but was not limited to, management reducing (or instructing others to reduce) Plaintiffs and putative class members' total hours worked so as not to exceed forty (40) hours per week.

26. AMURCON was able to access the individual time information of Plaintiffs and putative class members through office computers and manually adjust hours worked at AMURCON. For example, in its Policy, AMURCON stated that "supervisors have the authority and responsibility to manage the labor costs incurred within their departments . . . ." The policy stated further that, relative to supervisors, "[a]djustments may be made within two week period following overtime/on-call hours being incurred."

27. AMURCON's Policy confirms that "adjustments" to employees' worked hours can be made after the fact.

28. AMURCON employees had no right to question adjustments made their work hours. In the Policy, AMURCON stated that "[t]he associate who has worked the overtime does not have the right or authority to determine when he/she will take the adjusting time off."

29. On March 2, 2010, Lawrence Catrinar (AMURCON's President) sent an e-mail to AMURCON management which states:

> The payroll system provides managers access to time clock activity for each of your staff. The attached ["OT policy"] requires my authorization of all overtime and requires the manager to make every effort to offset any additional hours worked. This policy must be followed at all times. Larry

30. The 2010 Overtime Policy referenced by Lawrence Catrinar in the preceding paragraph states, in part:

> Non-exempt corporate office staff must request authorization from their supervisor to work more than 40 hours during any one week period. Should the supervisor determine the overtime is warranted, the supervisor must request approval from the President and indicate the plan to recoup the overtime . . .

31. An illustration of AMURCON's ongoing practice of time-records fixing can be shown in an e-mail from Amy-Beth Fleischer (AMURCON's Corporate Controller), which confirmed that worked overtime was retroactively reversed from employee time-records reports:

> a. "Ryan Stark was approved for 8 hours overtime during the 6/21-7/4 time period and worked 15.75. At [Tom Carnaghi's] instruction, 7.25 hours overtime is being reversed."
>
> b. "Andon Shopoff was not preapproved for any overtime and at Tom's instruction, 13.25 overtime hours is being reversed."
>
> c. "Jeff Velez was preapproved for 8 hours overtime during this time period and worked 14. At Tom's direction, 6 hours overtime is being reversed."

32. In addition to retroactively reversing employee overtime, AMURCON further manipulated worked overtime hours by changing its employees' time from overtime to "comp" time in an effort to avoid paying the employee time-and-a-half for those overtime hours.

6

33. For example, in an email to Amy Fleisher and Plaintiff Jani Platz, AMURCON supervisor Tom Carnaghi instructed them, with respect to other employees who worked overtime, "to give time off to comp everyone for time over."

34. In another e-mail, Tom Carnaghi instructed Amy Fleisher and Plaintiff Jani Platz, with respect to other employees who worked overtime, to "[g]ive comp time on the balance of the [overtime]. Can't afford all this OT."

35. Presumably, Defendant did not pay "comp" time at time-and-a-half as the FLSA requires for overtime hours.

36. Upon termination, Plaintiffs and putative class members were not compensated for accumulated overtime hours as required by law.

37. AMURCON knowingly and willfully engaged in this illegal scheme of time-records fixing in violation of the FLSA.

## COUNT I
### Violation of the Fair Labor Standards Act, 29 U.S.C. §201 et seq.

38. Plaintiffs incorporate by reference each and every paragraph of this Complaint as though fully stated herein verbatim.

39. At all relevant times, AMURCON has been an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

40. At all relevant times, Plaintiffs and putative class members were "employee[s]" of AMURCON as the term is defined under the FLSA.

41. At all times relevant to this action, AMURCON "suffered or permitted" the Plaintiffs and putative class members to work and thus "employed" them within the meaning of FLSA, 29 U.S.C. § 203(g).

42. The FLSA requires an employer to pay employees the federally mandated minimum wage as well as an overtime premium rate of one and one half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. 29 U.S.C. § 206.

43. AMURCON violated the FLSA by failing to pay Plaintiffs and putative class members the federally mandated minimum wage for all hours worked as well as failing to pay Plaintiffs and putative class members an overtime premium for all hours worked in excess of 40 hours per workweek.

44. AMURCON's violations of the FLSA were knowing and willful.

45. By failing to compensate Plaintiffs and putative class members at a rate not less than the minimum wage and not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, AMURCON violated the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §206(a)(1), § 207(a)(1) and § 215(a).

46. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid minimum and overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorney's fee.

47. As a result of AMURCON's violations, Plaintiffs and putative class members are entitled to their unpaid wage plus an additional equal amount in liquidated damages along with costs and reasonable attorney fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs requests the following relief:

A. Certifying this case as a collective action in accordance with 29 U.S.C. §216(b) with respect to the FLSA claim and order notice be issued as provided under the FLSA;

B. The actions of the AMURCON complained of herein be adjudicated, decreed, and declared a violation of AMURCON's obligations under the FLSA;

C. AMURCON be ordered to pay Plaintiffs and putative class members their unpaid overtime wages together with an equal amount in liquidated damages;

D. AMURCON be ordered to pay Plaintiffs and putative class members costs and reasonable attorneys' fees pursuant to the FLSA;

E. AMURCON pay prejudgment interest on these damages; and

F. That the Court grant such other and further relief as the Court may deem just or equitable.

## JURY DEMAND

NOW COME Plaintiffs, by and through their attorneys, SOMMERS SCHWARTZ, P.C., AVANTI LAW GROUP, PLLC, and TURNER & TURNER P.C., and hereby demand a trial by jury of the above entitled matter.

> s/ Jason J. Thompson (P47184)
> Daniel D. Swanson (P29288)
> Jesse L. Young (P72614)
> SOMMERS SCHWARTZ, P.C.
> 2000 Town Center, Suite 900
> Southfield, MI  48075-1100
> (248) 355-0300
> jthompson@sommerspc.com
>
> Robert A. Alvarez (P66954)
> AVANTI LAW GROUP, P.L.L.C.
> 600 28th Street S.W.
> Wyoming, MI  49509
> (616) 257-6807
> ralvarez@avantilaw.com
>
> Matthew L. Turner (P48706)
> TURNER & TURNER, P.C.
> 26000 W. 12 Mile Rd.
> Southfield MI, 48034
> (248) 355-1727
> matt@turnerandturner.com
>
> *Attorneys for Plaintiffs*

Dated:  December 14, 2010