UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLISON SHIPES and THERESA JULL,
individually  and on behalf of
similarly situated people,

                  Plaintiffs,           CASE NUMBER: 10-14943
                                       HONORABLE VICTORIA A. ROBERTS

v.

AMURCON CORPORATION, a Michigan
Corporation,

                  Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR
§ 216(b) CERTIFICATION AND NOTICE TO POTENTIAL CLASS MEMBERS**

**I.    INTRODUCTION**

Before the Court is Plaintiffs' Motion for § 216(b) Certification and Notice to

Potential Class Members. (Doc. # 17).

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion.

The Court **GRANTS** conditional collective action certification to a class of all

persons employed at Amurcon Corporation within three years of this Order, and paid on

an hourly basis, who were eligible for but did not receive, an overtime premium as

required under the Fair Labor Standards Act.

The Court **DENIES WITHOUT PREJUDICE** conditional certification to a class of

all salaried employees of Amurcon Corporation.

The Court **GRANTS** Plaintiffs' discovery request, as outlined in Section III(D) of

1

this Order.

## II.   BACKGROUND

Plaintiffs Allison Shipes and Theresa Jull are former employees of Defendant Amurcon Corporation ("Amurcon"), a property management company.  Shipes was a Leasing Agent paid on an hourly basis.  Jull was a Staff Accountant; she earned a salary. Former Plaintiff Kelly Kade was a Community Manager at Amurcon; however, she dismissed her claims with prejudice. (See Doc. # 51).  Former Plaintiff and Community Manager Jani Platz dismissed her claims with prejudice as well.  (See Doc. #s 59, 61).

Shipes and Jull filed suit against Amurcon on behalf of themselves and all similarly situated employees, alleging the company violated the Fair Labor Standards Act ("FLSA") in two ways.  First, Amurcon engaged in what Plaintiffs call "time-records fixing," described as improperly editing the time sheets of hourly employees to reduce the number of hours worked so Amurcon could avoid paying overtime wages for those hours.  Amurcon did this by removing hours from employees' time sheets after those hours were worked–thus not paying them for hours worked in one week above forty ("overtime hours")–and by changing its employees' time from overtime to "comp" time to avoid paying for overtime hours at the mandated rate of "not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207(a)(2).  Second, to the extent Amurcon classified its salaried employees as exempt, Plaintiffs say it did so improperly, since they perform essentially the same job duties as hourly, non-exempt employees.

Plaintiffs ask the Court to:

2

1) certify a collective action for unpaid overtime wages under §216(b) of the FLSA; 2) order Amurcon to provide Plaintiffs with the names, all known addresses and telephone numbers of the class members; and 3) approve the court-supervised notice, attached to this memorandum as *Exhibit A*, to the class members.  In addition, Plaintiffs request that this court approve an opt-in period of ninety days.

(Doc. # 17; Plaintiffs' Motion for § 216(b) Certification and Notice to Potential Class Members at 1).  Plaintiffs define their proposed collective class as: "*All hourly and salaried persons employed by Amurcon Corporation at any time since _____(the last three years) who were eligible for but did not receive an overtime premium as required under the Fair Labor Standards Act.*"  *Id.* (emphasis in original).

Affidavits support Plaintiffs' motion.  (*See* Doc. #s 17-3, 17-4, 17-6; Pls' Exs. B, C, and E).  Shipes says she worked as a Leasing Agent at Amurcon's Rochester Hills location from October 2009 to November 2010. (Doc. #17-3; Pls' Ex. B ¶ 3).  According to her affidavit, her job duties included: "returning calls from potential tenants, showing apartments to prospective tenants, processing tenant applications, preparing leases, preparing apartments for tenants to move-in, resident relations, processing work orders, collection of rents, conducting marketing activities, cleaning the office and vacant apartments, and walking the grounds to inspect for maintenance needs."  (*Id.* ¶ 5). She worked seven days a week.  (*Id.* ¶ 6). Throughout her employment, her supervisors made her "clock out" but continue working. (*Id.* ¶ 9).  She was regularly given "comp" time for hours that she worked in excess of forty hours per week. (*Id.* ¶ 10).  She knows of "many other individuals with whom [she] worked alongside and spoke with before, during, and after work who complained that they were not paid properly for overtime worked."  (*Id.* ¶ 12).

3

Jull says she worked as a Staff Accountant at Amurcon's Southfield location from January 2002 until February 2009. (Doc. # 17-6, Pls' Ex. E ¶s 3,5). Her job duties entailed: "data entry with respect to: monthly reports to the Michigan State Housing Development Authority and the U.S. Department of Housing and Urban Development, company financial statements, property taxes, year-end audits, and other general data entry for eleven (11) different Amurcon properties." (*Id.* ¶ 5). She claims she did not supervise other employees and was not permitted to exercise discretion. (*Id.* ¶ 8). She generally worked six or seven days per week during her final two years with the company. (*Id.* ¶ 10). Additionally, it was her understanding that she had to work until assignments were completed and could be disciplined if they were not done on time. (*Id.* ¶ 11). She says she knows of "other individuals who regularly worked overtime hours for Amurcon." (*Id.* ¶ 14).

## III.   ANALYSIS

### A.   General Principles

Pursuant to the FLSA of 1938, 29 U.S.C. § 201 *et seq.*, under certain circumstances an employer must not require an employee to work more than forty hours per week without paying that employee time and a half for overtime. *See* 29 U.S.C. §§ 207(a), 215(a). Section 216(b) permits, *inter alia*, an aggrieved employee to file suit against an employer on behalf of herself and other "similarly situated" employees. *Id.* § 216(b), *ruled unconstitutional on other grounds in Alden v. Maine*, 527 U.S. 706, 712 (1999) (finding unconstitutional provision of FLSA authorizing private actions against states in state courts without their consent).

4

However, there are exemptions to the maximum hour/overtime pay requirements of the FLSA. *See id.* § 213. Relevant to this case is the "bona fide executive, administrative, or professional" employee exemption. *Id.* § 213(a)(1). Under § 213(a)(1), the maximum hour and overtime pay requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity. . . ." *Id.*

The FLSA implementing regulations include a short test for classifying employees for purposes of the executive, administrative or professional exemption. An employee is an exempt executive if: (1) she is paid on a salary basis not less than $455 per week, exclusive of board, lodging or other facilities; (2) her primary duty is management of the enterprise or a department or subdivision of the enterprise; (3) she regularly directs the work of two or more employees; and (4) she has the authority to hire or fire other employees or her "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change in status of other employees are given particular weight." 29 C.F.R. § 541.100(a).

An employee is an exempt administrator if: (1) she is paid on a salary or fee basis at not less than $455 per week, exclusive of board, lodging or other facilities; (2) her primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer's customers; and (3) her primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *Id.* § 541.200. The regulations provide examples of exempt administrators, including certain employees in the financial services industry. *See id.* § 541.203(b).

5

An employee who files an FLSA action on behalf of herself and others, seeks conditional certification of a "collective action."  *See Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213, 216 (E.D. Mich. 2010).  Collective actions are different from class actions under Fed. R. Civ. P. 23 in that putative class members must opt in, as opposed to opt out, of the class.  *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009).  "These opt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action."  *Id.*  A collective action serves an important remedial purpose; through it, a plaintiff who has suffered only small monetary harm can join a larger pool of similarly situated plaintiffs.  *Id.* at 586. (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).  "That pool can attract effective counsel who knows that if the plaintiffs prevail, counsel is entitled to a statutorily required reasonable fee as determined by the court."  *Id.*

There are two requirements for a collective action under Section 216(b) brought on behalf of an employee and others similarly situated.  *Comer v. Wal-Mart Stores,* 454 F.3d 544, 546 (6th Cir. 2006).  First, the plaintiffs must be "similarly situated" to each other and to putative plaintiffs.  *Id.*  Second, the putative plaintiffs must signal their affirmative consent to participate in the suit in writing.  *Id.*  "The district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit."  *Id.* (citing *Sperling*, 493 U.S. at 169).

Courts generally employ a two-stage approach to determine whether the opt-in and named plaintiffs are "similarly situated" for purposes of certifying a collective action. *See Wlotkowski*, 267 F.R.D. at 217; *Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 3154252, at *1 (E.D. Ky. Sept. 28, 2009).  At the "notice stage"–which takes place at the

6

beginning of discovery–"the court determines whether the suit should be 'conditionally certified' as a collective action so that potential opt-in plaintiffs can be notified of the suit's existence and of their right to participate." *Serco*, 2009 WL 3154252, at *1 (*citing Comer*, 454 F.3d at 546). "The final certification decision is made at the second stage, 'after all of the opt-in forms have been received and discovery has concluded.'" *Id.* (quoting *Comer*, 454 F.3d at 546-47).

The FLSA does not define "similarly situated;" neither has the Sixth Circuit. *O'Brien*, 575 F.3d at 584. "However, district courts have based their final certification decisions on a variety of factors, including the 'factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action.'" *Id.* (quoting 7B Wright, Miller, & Kane, *Federal Practice and Procedure* § 1807 at 497 n. 65).

Named plaintiffs bear the burden to show that the opt-in plaintiffs are similarly situated to them. *Id.* The burden at the notice stage–the stage at which this motion comes–is "fairly lenient;" at this stage courts typically conditionally certify a representative class because the court has only minimal evidence before it–the pleadings and affidavits submitted by the parties. *Morisky v. Pub. Serv. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000); *see also Serco*, 2009 WL 3154254, at *2 ("Because the conditional-certification decision is generally made prior to or early in discovery, the plaintiff's evidentiary burden at this stage is not a heavy one."). This burden is less stringent than that required for class certification under Fed. R. Civ. P. 23. *Wlotkowski*, 267 F.R.D. at 217.

7

At the notice stage, the plaintiffs must show that there is a reasonable basis for their claim that there are other similarly situated employees.  *Serco*, 2009 WL 3154254, at *2.  "However, only a 'modest factual showing' is required to authorize notice to potential plaintiffs. . . ."  *Id.* (quoting *Comer*, 454 F.3d at 547).  "The  plaintiffs must show only that their position is similar, not identical, to the positions of the putative class members."  *Id.*  "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (emphasis in original) (internal citations omitted).  "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.  The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice."  *Id.*

Although the Sixth Circuit and the FLSA do not define "similarly situated," the Sixth Circuit teaches that at the notice stage, plaintiffs are similarly situated when they allegedly all suffer from a single, FLSA-violating policy.  *O'Brien*, 575 F.3d at 585; *see also Olivo v. GMAC Mortg. Corp.*, 374 F.Supp.2d 545, 548 (E.D. Mich. 2004) (to show that they are "similarly situated" to putative plaintiffs for notice purposes, plaintiffs can demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law).  However, showing a unified common policy that violates the FLSA is not required.  *O'Brien*, 575 F.3d at 584.  In addition, to be similarly situated, it is sufficient–though not necessary–if the plaintiffs' claims are unified by common

theories of defendants' statutory violations, even if the proofs of those theories are individualized. *Wlotkowski*, 267 F.R.D. at 217.

At this first stage, courts do not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations. *Id.* at 219. "Rather, those tasks are addressed at the second stage." *Id.*

## B.    Plaintiff Shipes

Defendants say Plaintiffs' proposed class is too broad. To the extent Plaintiffs include both hourly and salaried (allegedly FLSA-exempt) employees of Amurcon in one class, the Court agrees. As an hourly Leasing Agent, Shipes is not similarly situated to her salaried counterparts. Amurcon does not argue that Shipes is covered by the executive, administrative, or professional employee exemption. Plaintiffs seem to acknowledge this; in their response to Defendant's supplemental brief, they say the Court can create multiple classes to resolve the problems inherent in maintaining a large, broad class which includes all hourly and salaried employees.

The reasoning of *Mathews v. ALC Partner, Inc.* applies here:

ALC notes that the Managers and Assistant Managers were classified as exempt from overtime, whereas the Technicians were not. This, argues ALC, means that the claims of these two groups of employees are simply too different for them to be similarly situated. The Court agrees. The Technicians' claims in this suit will be simply that they were not paid for some of the hours they worked. By contrast, employees who were classified as exempt will have to show not only that they worked uncompensated hours, but also that the substance of their work was not, in fact, predominantly managerial. This major difference between the two types of claims leads the Court to conclude that, in this context at least, exempt and non-exempt ALC employees are not "similarly situated" within the meaning of the FLSA. Furthermore, due to the varying job duties of Managers and Assistant Managers, both of which will be relevant to the propriety of their managerial classifications, the Court concludes that even these two groups of employees cannot be included in a single class.

9

No. 2:08-CV-10636, 2009 WL 2591497, at *5 (E.D. Mich. Aug. 24, 2009); *accord Prater*

*v. Commerce Equities Mgmt. Co., Inc.*, No. H-07-2349, 2007 WL 4146714, at *7 (S.D.

Tex. Nov. 19, 2007) ("The record supports certification of a class of hourly employees

and a class of allegedly misclassified salaried employees.").

Jull and other salaried employees are exempt from the FLSA's overtime payment

requirements, says Amurcon, and so the merits of their claims require a  fact-intensive

analysis of their job requirements and duties in light of the FLSA and its implementing

regulations. This is especially so where employees who perform some non-

management and non-discretionary functions can still be considered exempt under the

regulations.  *See* 29 C.F.R. §§ 541.100, 541.200.  Jull and those she purports to

represent will need to show that the substance of their work was not *predominantly*

managerial or administrative. Thus, the salaried employees are not suitable for class

treatment with clearly non-exempt employees paid on an hourly basis.

However, this Court has the discretion to re-shape the class in an appropriate

manner.  *See, e.g.*, *Vasquez v. Vitamin Shoppe Indus., Inc.*, No. 10 Civ. 8820, 2011 WL

2693712, at *4 (S.D.N.Y. July 11, 2011) (narrowing a proposed nationwide conditional

collective class of all former and current store managers of the defendant's retail shop

to a class of all store managers employed at any of the seven Vitamin Shoppe stores

identified by the plaintiff in his reply declaration); *Mathews*, 2009 WL 2591497, at *5

(dividing a proposed conditional collective class consisting of managers, assistant

managers, and technicians employed at American Laser Centers into three distinct

classes based on job title/duties and exempt/non-exempt status); *Prater*,  2007 WL

4146714, at *7 (dividing a proposed conditional collective class of employees who worked as apartment office employees, including leasing agents, leasing managers, assistant property directors, and marketing directors into two classes of apartment office employees–hourly employees and allegedly misclassified salaried employees).

Shipes does make the minimal showing required for conditional collective action certification of a class of hourly Amurcon employees.  Shipes alleges–and provides concrete evidence of–a FLSA-violating policy and/or practice of making "adjustments" to "hours worked" so that non-exempt employees are not paid overtime wages, (*see* Doc. #s 17-7, 17-8; Exs. F and G to Plaintiff's Motion for § 216(b) Certification).  She claims that she and others similarly situated regularly worked more than forty hours per week and were not compensated accordingly.  Company emails attached as exhibits bolster this claim; they are evidence that certain hourly employees' overtime hours were reversed. (*See* Doc. # 17-9; Ex. H to Plaintiffs' Motion for § 216(b) Certification).

Defendant points out that the hourly employees at Amurcon hold different job titles, and likewise perform different job duties.  For example, while Shipes is a Leasing Agent, the company employs hourly workers in other capacities, such as Human Resources Specialist and Maintenance.  These distinctions are not dispositive at this early stage.  *See, e.g.*, *Wlotkowski*, 267 F.R.D. at 219 ("Defendants arguments about the predominance of individualized inquiries and the dissimilarities between plaintiff and other employees are properly raised after the parties have conducted discovery and can present a more detailed factual record for the court to review.").

Courts observe that "'disparate factual and employment settings of the individual plaintiffs' should be considered at the second stage of the analysis."  *White v. MPW*

11

*Indus. Servs., Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001), *cert. denied*, 536 U.S. 934, 122 S.Ct. 2614 (2002)).  Once plaintiffs meet their burden at the notice stage, a defendant cannot overcome their showing by arguing that individual issues predominate.  *Id.; Vasquez*, 2011 WL 2693712 at *4 n. 3 ("[I]t is well settled that the existence of certain individual claims or defenses does not preclude the conditional certification of an FLSA collective action.") (citations and quotation marks omitted).   If, after notice to the putative plaintiffs, it appears that individual issues do in fact dominate, the defendant may move to decertify.  *Id.*; *accord Ray v. Motel 6 Operating Ltd. P'ship*, No. 3-95-828, 1996 WL 938231, at *3 (D. Minn. Mar. 18, 1996) (discussing individualized factors that support decertification at the second stage).

At this stage, "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or conduct in conformity with that policy proves a violation as to all the plaintiffs."  *O'Brien*, 575 F.3d at 585; *see also Comer,* 454 F.3d at 546-47 (6th Cir. 2006) (certification at the notice stage is conditional, not final, and plaintiff must show only that his position is similar, not identical, to the positions held by putative class members); *Vasquez,* 2011 WL 2693712, at *4 ("Courts will certify broad classes where there is some showing that all members of the putative class performed the same job duties . . . *or* that the employer had uniform company-wide employment practices.") (citations omitted) (emphasis added).

Although proof of class members' claims will inevitably be individualized, these claims will be "unified by common theories of defendants' statutory violations," that is,

12

"improperly editing time sheets."  *O'Brien*, 575 F.3d at 585 (concluding that plaintiffs were similarly situated despite the lack of a single, FLSA-violating policy by the allegation that the defendant employed two common means to cheat the plaintiffs out of their overtime pay).

In *Donahue v. Francis Servs., Inc.*, No. Civ.A. 04-170, 2004 WL 1161366 (E.D. La. May 24, 2004), a district court in Louisiana drew the same conclusion.  There, plaintiffs were current and former employees of defendant Francis Services ("Francis") who were allegedly denied overtime payments due them as a result of two Francis policies.  *Id.* at *1.  The defendant argued that the plaintiffs were not similarly situated because the proposed class included individuals who held different positions that involved different job descriptions, duties, pay rates, pay scales, pay practices and/or work locations.  *Id.*

The Court rejected this argument.  *Id.* at *2.  It held, "[w]hether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations."  *Id.*  It was enough that "[t]he named plaintiffs and putative collection action members [were] current and former non-exempt Francis employees, who allege[d] that they were not paid overtime for hours worked in excess of 40 per week, and also, that when they were paid overtime, their base rates were improperly calculated due to a Francis policy of classifying part of their base pay as a discretionary bonus."  *Id.*

The *Francis* court noted that the named plaintiffs did not allege that they were singled out; rather, "that all hourly employees who worked overtime and/or were paid discretionary bonuses not included in their base pay for calculation of overtime, were

affected by the company's policy." *Id.*; *see also Purnamasidi v. Ichiban Japanese Rest.*, No. 10cv1549, 2010 WL 3825707, at *1-*4 (D.N.J. Sept. 24, 2010) (conditionally certifying a collective class of "servers, bussers, runners and other tipped food service workers" who allegedly worked more than forty hours per week but were not paid overtime nor paid the prevailing minimum wage).

Furthermore, the Court is not persuaded by Amurcon's argument that Plaintiffs must provide evidence that other employees wish to opt in before the Court conditionally certifies a collective class. While some courts, at least in the Eleventh Circuit, apply such a requirement, *see, e.g.*, *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991) (before providing notice to potential pot-in plaintiffs, the district court should satisfy itself that there are other employees who wish to opt-in), many other courts do not. *See, e.g.*, *Jesiek v. Fire Pros,* Inc., 275 F.R.D. 242, 247 (W.D. Mich. 2011) ("Plaintiffs' failure to provide evidence that potential opt-in plaintiffs . . . desire to opt-in is not fatal to their motion."); *Lyons v. Ameriprise Fin., Inc.*, No. 10-503, 2010 WL 3733565, at *5 (D. Minn. Sept. 20, 2010) ("The existence of more than one or two plaintiffs in an FLSA case at the time of the conditional-certification inquiry has been found sufficient to warrant collective-action treatment, even without a showing that other individuals wish to opt in."); *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007) (determining that requiring plaintiffs to produce evidence that other employees wish to join the class before notice is sent "puts the cart before the horse" and "does not make sense" because it would force plaintiffs' attorneys to issue their own informal notice or otherwise solicit plaintiffs, undermining a court's ability to provide putative plaintiffs with "a fair and accurate notice," and would "leave significant

14

opportunity for misleading the potential plaintiffs"); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002) (requiring plaintiffs to establish there are other plaintiffs who desire to opt in at the notice stage appears to conflict with the Supreme Court's admonition that the FLSA should "be liberally 'applied to the furthest reaches consistent with congressional direction.'" (quoting *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985))).

The Court agrees with the reasoning of these courts. Importantly, the Sixth Circuit has never required evidence that others will opt in before the certification decision can be made. Instead, it recognizes the "broad remedial goals" of the FLSA, *O'Brien*, 575 F.3d at 586, which would be undermined by a requirement that Plaintiffs produce evidence that other employees wish to join the class before notice is sent to putative plaintiffs. *Heckler*, 502 F.Supp.2d at 780.

Shipes meets her light burden to make a modest factual showing that she and other hourly, non-exempt employees of Amurcon are similarly situated. The Court can reexamine its ruling if discovery does not support the allegations. Likewise, if some putative collective action members fail to allege they suffered from Amurcon's alleged unlawful policy and practice of editing time sheets, the Court can consider partial decertification. *See O'Brien*, 575 F.3d at 586.

### C.    Plaintiff Jull

The more difficult question is whether Plaintiff Jull meets her burden to show that she is similarly situated to other allegedly exempt salaried Amurcon employees. If she does, the Court can certify two classes, one consisting of hourly, non-exempt employees and the other of salaried, allegedly exempt employees. The Court finds that

15

she does not.

Many courts agree that it is not enough, even at the notice stage, to allege lead and opt-in plaintiffs are similarly situated simply because of the defendant's common scheme to misclassify them as exempt. *See Vasquez*, 2011 WL 2693712, at *4 (a named plaintiff is not similarly situated to a proposed plaintiff simply because she shares exempt status); *Morisky*, 111 F.Supp.2d at 498 (denying conditional collective action certification where the plaintiffs made no showing that the job responsibilities of the named plaintiffs were the same or similar to those of the remaining members of the proposed class, or that the opt-in plaintiffs could be properly classified as non-exempt and where the only common thread was the defendant's classification of plaintiffs and proposed plaintiffs as exempt under the FLSA).

An Arizona district court explained the reason for this:

> As a matter of both sound public policy and basic common sense, the mere classification of a group of employees-even a large or nationwide group-as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as "similarly situated" for § 216(b) purposes. If it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification, irrespective of the quality and quantity of evidence that had been produced in the form of declarations and supporting exhibits. Such a rule would run counter to the long established law governing § 216(b) actions, which states that whether an employee has been properly exempted under the FLSA necessitates a fact specific inquiry.

*Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010).

In misclassification cases, "'similarly situated' must be analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt." *Id.*; *accord*

16

*Morisky*, 111 F.Supp.2d at 498.  Entitlement to compensation depends on an individual, fact-specific, case-by-case analysis of each employee's job duties under the relevant statutory exemption.  *Colson*, 687 F.Supp.2d at 927.  A collective action is only appropriate where the plaintiffs make a modest factual showing that the nature of the work performed by all class members is at least similar to their own.  *Morisky*, 111 F.Supp.2d at 498; *see also Myers*, 624 F.3d at 555 ("In a FLSA exemption case, plaintiffs [meet their burden at the first stage] by making some showing that 'there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008))); *Prater*, 2007 WL 4146714, at *7 ("Collective action treatment is proper for misclassification claims when the employees have essentially the same basic job responsibilities.").

Jull, a former Staff Account, provides no evidence that other salaried employees performed similar job duties as she.  Moreover, her description of her job responsibilities is patently dissimilar from that of Former Plaintiff and Community Manager Platz.  It is presumably dissimilar from other non-Staff Account exempt employees.

The Court is mindful that while Plaintiff's burden at this stage is not stringent, certification is by no means automatic.  *Colson,* 687 F.Supp.2d at 925.  Jull provides nothing more than mere allegations that she and others like her were improperly classified as FLSA-exempt.  These allegations lack factual support (such as the written policies and emails that support a class of hourly, non-exempt plaintiffs) and are not enough to meet her burden at this stage.

17

While her affidavit suggests she may have been subjected to FLSA-violating practices, standing alone, this declaration does not establish a right to proceed collectively. *See, e.g.*, *Bramble v. Wal-mart Stores*, No. 09-4932, 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011) ("The right to proceed collectively may be foreclosed where an action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.") (citations and internal quotation marks omitted).

In *Colson*, the court concluded that the plaintiffs' three declarations and several exhibits "[did] not come close" to establishing a sufficient evidentiary basis that all Sales and Marketing Representatives (SMRs) at the defendant corporation "performed similar tasks and were, as a discernable class, potentially misclassified as employees exempt from over-time pay requirements." 687 F. Supp. 2d at 928. The court noted that plaintiff Colson's affidavit revealed she had minimal contact with SMRs outside of her home state, even though the proposed class was nationwide. *Id.* The court observed:

> To the extent Ms. Colson has provided information relating to Defendant's employment practices with SMRs outside the state of Oregon, it is based on nothing more than her opinions, which are vague and appear to be based on unspecified hearsay from unidentified sources. This is readily apparent from Ms. Colson's declaration, which makes reference to "discussions . . . with [unidentified] co-workers," unspecified "company communications," and undocumented "interactions with other SMR employees and Avnet clients." Her allegations also lack specificity with regards to time or place, and her filing is filled with statements that lack personal knowledge. While Ms. Colson's declaration has some value in describing her own experience, it has no probative value in establishing that she, along with other SMRs across the country, "were together the victims of a single decision, policy, or plan." (Citation omitted). Essentially, Ms. Colson's declaration describes the experience of one former Avnet employee in one office who is claiming to have not been paid the overtime wages she was entitled to.

*Id.* at 928-29.

18

Jull provides even less than the plaintiff in *Colson.*  Her bare-bones affidavit states only, "I know of other individuals who regularly worked overtime hours for Amurcon."  (Doc. # 17-6; Ex. E to Plaintiffs' Motion for § 216(b) Certification).  She does not even say whether these other, unspecified individuals were paid for their hours of overtime.

Jull fails to make the requisite modest factual showing that they and other allegedly exempt employees are similarly situated.  Her showing is in stark contrast to that made by plaintiffs in *Wlotkowski*, a case Plaintiffs rely on for support.  There, eleven named plaintiffs, joined by sixty opt-in plaintiffs, who were all former or current "Outside Plant Engineers" at defendant Michigan Bell Telephone Company, filed a collective action alleging the defendant misclassified them as FLSA-exempt employees.  267 F.R.D. at 214.  In certifying a conditional class, the court observed that the motion was supported by thirty-five declarations from named and opt-in plaintiffs.  *Id*. at 215.  The court noted that although the job title could be broken down to four different positions, the declarations revealed: the employees shared one primary job duty; their work was governed by standards and technical specifications over which they had no control; and they worked alongside each other every day, watched each other work, could perform each other's jobs, and consulted each other about their work.  *Id.* at 215-16.

It is clear that the plaintiffs in *Wlotkowski* presented much more evidence to support their claim of similar situation than Jull.  Importantly, from the thirty-five declarations of the *Wlotkowski* lead and opt-in plaintiffs, the court was able to discern that they held the same job title, performed similar duties, and shared the same primary job duty.  Plaintiffs' Complaint simply states that "Plaintiffs and putative class members

19

worked performing *various job duties* throughout Defendant's places of business, including but not limited to its principal office in Oakland County." (Doc. # 1; Complaint and Jury Demand at 1) (emphasis added). It does not indicate whether all salaried, allegedly exempt employees performed similar job duties. Nor do Plaintiffs inform the Court of the various job titles of employees allegedly misclassified as exempt.

Community Manager and Staff Accountant are two job titles; presumably there are others. The *Wlotkowski* plaintiffs all shared the same job title. Jull's affidavit does not suggest that she could step into a Community Manager's shoes. Nor does it suggest she could step into the shoes of any other non-Staff Accountant salaried employee. It reveals she worked in a different location than former Plaintiff and Community Manager Platz and suggests she did not watch Platz work, did not consult with Platz about their jobs, and did not fill in for Platz.

While creating a class of all Staff Accountants (rather than all salaried employees) is one option, the Court still has no basis to believe that there are others similarly situated to Jull within this category. Amurcon employs approximately 250 workers and is headquartered in Oakland County, but there are other offices. Jull does not reveal how many of Amurcon's 250 workers were classified (or misclassified) as exempt Staff Accountants, or which offices other Staff Accountants worked in. She does not say she has personal knowledge–for example, from watching other Staff Accountants perform their job duties–that these employees performed similar work herself and each other. These distinctions make *Wlotkowski* inapposite.

However, the Court will give Jull a second opportunity to seek conditional certification after she has had a chance to conduct discovery. *See, e.g.*, *Arrington*,

2011 WL 3319691, at *6 ("Because the plaintiffs' showing is not sufficient to warrant
conditional certification, the Court will deny the motion at this time.  However, when
courts deny such motions at this stage of the proceedings, the court still may permit
discovery to provide plaintiffs a second opportunity to obtain sufficient evidence of a
collective to warrant conditional certification and notice to opt in.") (citation and
quotation marks omitted).  Therefore, while the Court declines to conditionally certify a
class with Jull in it, this portion of Plaintiffs' motion is denied without prejudice.  Plaintiffs
should also conduct discovery on whether there is a conflict in having Staff Accountants
represented by the same counsel as their hourly employees.  *See, e.g.*, *Mathews*, 2009
WL 2591497, at *6-*7.

### D.    Plaintiffs' Proposed Notice, Discovery Request and Opt-in Period

Plaintiffs attach a proposed notice to their motion as Exhibit A.  (*See* Doc. # 17-2;
Pls' Ex. A).  In *Hoffman-La Roche*, 493 U.S. at 169, the Supreme Court held that district
courts have discretion to implement § 216(b) by facilitating notice to putative plaintiffs.
The Court acknowledged "the propriety, if not necessity" in some circumstances, "for
court intervention in the notice process."  *Id.* at 170.  Plaintiffs also request a list of all
potential class members and a ninety-day opt-in period.

In *Wlotkowski*, the district court explained the reasons for court-facilitated notice
to putative plaintiffs in an FLSA collective action:

> Judicial notice is appropriate here for several reasons.  First, unlike class
> actions under Rule 23, conditional certification of a collective action under
> § 216(b) of the FLSA does not toll the statute of limitations for potential
> plaintiffs. . . . Accordingly, an employee who does not opt-in by filing a
> signed consent with the Court cannot recover.  *See* 29 U.S.C. § 216(b).
> Thus, judicial notice protects these claims by informing similarly situated
> employees of the facts needed to make an informed decision whether to

21

opt-in. . . . Second, judicial notice promotes judicial economy, helps avoid "multiplicity of duplicative suits" inherent in these types of lawsuits, and notifies putative plaintiffs of an economically feasible litigation option.

267 F.R.D. at 219 (citations omitted).

Defendants do not make any specific objections to Plaintiffs' proposed notice. However, the notice must be amended in light of the Court's denial of Plaintiff Jull's motion for conditional certification and former Plaintiffs' (Kade and Jull) dismissal. All reference to salaried workers must be removed from the notice. The conditional class includes all hourly persons employed by Amurcon within three years of this Order, who were eligible for but did not receive overtime wages. Shipes must submit an amended notice for Court review within seven (7) days of this Order. Defendant will then have three (3) days within which to object before the Court makes its decision.

The Court grants Plaintiffs' request to obtain a list of "all potential class members." (Doc. # 17 at 11). Because Jull's motion is denied without prejudice, she is entitled to discovery to determine whether to re-file a motion for conditional certification with respect to all Staff Accountants. Thus, in addition to providing Plaintiffs with a list of all hourly persons employed at Amurcon within three years of the date of this Order, Defendant must also furnish a list of all Staff Accountants of Amurcon during the relevant time period. These lists must include the information requested, *i.e.*, the names, last known addresses and telephone numbers, all job titles held, and dates and locations of employment of all hourly and salaried employees (and former employees) of Amurcon, employed within the relevant time period. Defendant has fourteen (14) days after the date of this Order to provide this information.

Finally, the Court believes a ninety day opt-in period is reasonable and grants

22

Plaintiffs' request.

## IV.    CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for §

216(b) Certification and Notice to Potential Class Members.

The motion, to the extent it seeks conditional collective action certification of a

class of hourly employees, is **GRANTED.**  Likewise, to the extent the motion seeks

judicial notice of the action to all hourly employees, and a ninety-day opt-in period, it is

**GRANTED.**

To the extent the motion asks for certification of a class of salaried employees

misclassified as exempt under the FLSA, it is **DENIED WITHOUT PREJUDICE.**

Plaintiffs' request for discovery is **GRANTED.**

**IT IS ORDERED.**


S/Victoria A. Roberts_____
Victoria A. Roberts
United States District Judge

Dated:  March 23, 2012

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 23, 2012.<br><br>S/Linda Vertriest_____<br>Deputy Clerk |